EXHIBITS TO NOTICE OF REMOVAL



1

**JACKSONWHITE**
ATTORNEYS AT LAW
*A Professional Corporation*

2

3

4  40 North Center Street, Suite 200
   Mesa, Arizona 85201
   Telephone No.:    (480) 464-1111
5  Facsimile No.:    (480) 464-5692
   Email:    centraldockett@jacksonwhitelaw.com
6  *Attorneys for Defendants*
   By:    Michael R. Pruitt, State Bar No. 011792
7           mpruitt@jacksonwhitelaw.com

8

9

10                **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

11                  **IN AND FOR THE COUNTY OF MARICOPA**

12  Pauline Lopez, a married woman filing
    individually,

13

14                    Plaintiff,

    vs.
15

    Higley Unified School District No. 60, a
16  public school district in Maricopa County,
    Arizona; John and Jane Does I-X; Black
17  Corporations I-X; and White Partnerships
    I-X,
18
                      Defendants.
19

20  THE STATE OF ARIZONA TO THE DEFENDANT(S):

21                HIGLEY UNIFIED SCHOOL DISTRICT NO. 60

CV2010-092248

Case No. CV _____

**SUMMONS**

If you would like legal advice from a lawyer,
contact the Lawyer Referral Service at

602-257-4434
or
www.lawyerfinders.org.

Sponsored by the
Maricopa County Bar Association

22

23        YOU ARE HEREBY SUMMONED and required to appear and defend, within the

24  time applicable, in this action in this Court. If served within Arizona, you shall appear and

25  defend within twenty (20) days after the service of the Summons and Complaint upon you,

26  exclusive of the day of service. If served out of the State of Arizona—whether by direct

1 | service, by registered or certified mail, or by publication—you shall appear and defend within
2 | thirty (30) days after the service of the Summons and Complaint upon you is complete,
3 | exclusive of the day of service. Where process is served upon the Arizona Director of
4 | Insurance as an insurer's attorney to receive service of legal process against it in this state,
5 | the insurer shall not be required to appear, answer or plead until expiration of 40 days after
6 | date of such service upon the Director. Service by registered or certified mail without the
7 | State of Arizona is complete thirty (30) days after the date of filing the receipt and affidavit
8 | of service with the Court. Service by publication is completed thirty (30) days after the date
9 | of first publication. Direct service is complete when made. Service upon the Arizona Motor
10 | Vehicle Superintendent is complete thirty (30) days after filing the Affidavit of Compliance
11 | and return receipt or Officer's Return. RCP 4, ARS §§20-222, 28-502, 28-503.

12 | YOU ARE HEREBY NOTIFIED that in case of your failure to appear and defend
13 | within the time applicable, judgment by default may be rendered against you for the relief
14 | demanded in the Complaint.

15 | YOU ARE CAUTIONED that in order to appear and defend, you must file an Answer
16 | or proper response in writing with the Clerk of this Court, accompanied by the necessary
17 | filing fee, within the time required. You are required to serve a copy of any response upon
18 | the Plaintiff's attorney. RCP 10(d), ARS §12-311, RCP 5.

19 | The name and address of Plaintiff's attorney is:

20 |
Michael R. Pruitt, Esq.
JACKSON WHITE
21 | 40 North Center Street, Suite 200
Mesa, Arizona 85201
22 | (480) 464-1111

23 |

24 | / / /

25 | / / /

26 | / / /

2

1 REQUESTS FOR REASONABLE ACCOMMODATION FOR PERSONS WITH
DISABILITIES MUST BE MADE TO THE DIVISION ASSIGNED TO THE CASE BY
2 PARTIES AT LEAST THREE (3) JUDICIAL DAYS IN ADVANCE OF A SCHEDULED
COURT PROCEEDING.

3

SIGNED AND SEALED this date:

4

MAR 3 0 2010

5

6 Clerk

7 By: _____
Deputy Clerk

8 F:\JKL\Lopez, P\Pldgs\Summons.HUSD.wpd
A. JAMES
9 DEPUTY CLERK

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

JACKSON WHITE
ATTORNEYS AT LAW

3

1
**JACKSONWHITE**
2
ATTORNEYS AT LAW
*A Professional Corporation*
3
40 North Center Street, Suite 200
4 Mesa, Arizona 85201
Telephone No.:      (480) 464-1111
5 Facsimile No.:      (480) 464-5692
Email:      centraldockett@jacksonwhitelaw.com
6 *Attorneys for Defendants*
By:     Michael R. Pruitt, State Bar No. 011792
7          mpruitt@jacksonwhitelaw.com

8

9

10 **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

11 **IN AND FOR THE COUNTY OF MARICOPA**

CV2010-092248

12 Pauline Lopez, a married woman filing
individually,
13                                             Case No. CV _____
                        Plaintiff,
14                                             **COMPLAINT**
vs.
15                                             (Wrongful Termination In Violation of
Higley Unified School District No. 60, a       A.R.S § 23-1501(3)(c)(ii); and
16 public school district in Maricopa County,   Intentional Infliction of Emotional
Arizona; John and Jane Does I-X; Black         Distress)
17 Corporations I-X; and White Partnerships
I-X,                                           (*Jury Trial Requested*)
18
                        Defendants.
19

20         Plaintiff, Pauline Lopez, by and through her counsel undersigned, and for her

21 Complaint, alleges as follows:

22         1.      Plaintiff is, and at all times relevant to this action has been, a married woman

23 residing in Maricopa County, Arizona, who is filing this action individually.

24         2.      Defendant, Higley Unified School District No. 60 ("HUSD"), is a public school

25 district in Maricopa County, Arizona as defined by A.R.S. § 15-1401, *et seq*.

26 ///

3.    At all times material hereto, HUSD was acting through its agents and/or employees, and is therefore liable for the actions of those agents and/or employees under the doctrine of respondeat superior.

4.    John and Jane Does I-X, Black Corporations I-X, and White Partnerships I-X, are fictitious individuals or entities who may be liable to Plaintiff for all or part of her damages. At this time, the true names of these individuals or entities are not known, but leave of court will be sought to add their true names at such time as they are discovered.

5.    The events giving rise to these causes of action occurred in Maricopa County, Arizona within the jurisdiction of this court.

6.    This court has subject matter jurisdiction over Plaintiff's claims.

## BACKGROUND FACTS

7.    Plaintiff began working for HUSD on October 17, 2001 as an Accounts Payable Clerk. In 2004, she was promoted to the position of Accounts Payable Coordinator for the District.

8.    Prior to working for HUSD, Plaintiff had worked for Paige Schools for seven years. As such, Plaintiff was employed by HUSD for eight and a half years and in Arizona schools for a total of over fifteen years.

9.    As Accounts Payable Coordinator, Plaintiff was responsible for processing requisitions from HUSD staff per the purchasing processes established by HUSD, verifying receipt of goods or services, paying invoices and/or ensuring invoices are paid for goods or services received, maintaining accuracy of vendor maintenance files, processing 1099s for appropriate vendors, assuring that purchase orders stay within HUSD's budget, maintaining complete and accurate files and records on behalf of the Business Manager, receiving training on skills and technology used in performance of duties, and supporting HUSD's Business Manager and Business Office.

10.    Plaintiff is 58 years old.

2

1     11.    Plaintiff was and is qualified as an Accounts Payable Coordinator.

2     12.    Prior to the incidents that give rise to this litigation, Plaintiff's work
3 performance was always at least satisfactory, and she received regular pay increases each
4 year. Plaintiff enjoyed and valued her job at HUSD.

5     13.    In December 2008, Plaintiff received a purchase order and receipts for travel
6 expenses incurred by a teacher in the District on a trip to St. Louis with some students.

7     14.    Upon review of the receipts, Plaintiff concluded that the teacher did not qualify
8 for reimbursement on one of the submitted receipts. The receipt in question was for dinner
9 purchased by the teacher upon her arrival back in Phoenix; the dinner did not qualify for
10 reimbursement because the teacher had been in travel status for only sixteen hours when she
11 purchased the dinner and by law could receive reimbursement for the dinner only after
12 having been in travel status for at least eighteen hours.

13     15.    Plaintiff called the teacher and explained to her why she would not receive
14 reimbursement on the single receipt. The teacher seemed to understand and did not argue
15 the point.

16     16.    A few days later, Plaintiff's supervisor, Joan Fabok ("Fabok"), requested a
17 copy of the purchase order and saw that the teacher had not received the thirty dollars for the
18 dinner in question.

19     17.    Subsequently, on January 29, 2009, Ms. Fabok had an additional purchase
20 order created to provide reimbursement to the teacher on two receipts for luggage costs in
21 the amount of fifteen dollars each, for a total of thirty dollars. However, the teacher already
22 had been reimbursed for these exact luggage costs with the previous purchase order
23 processed by Plaintiff.

24     18.    When Plaintiff became aware of the second purchase order, she approached
25 Ms. Fabok and explained that the teacher had already received reimbursement for the luggage
26

JACKSONWHITE
ATTORNEYS AT LAW

3

1   costs.  Plaintiff pointed out the luggage reimbursement on the original purchase order, to

2   which Ms. Fabok simply said, "oh, ok."

3       19.    When Plaintiff subsequently received the checks, her understanding was that

4   the second purchase order and related check for thirty dollars was a mistake and that she was

5   to void the check.

6       20.    However, before she had voided the check, Ms. Fabok asked Plaintiff for the

7   thirty dollar check so that she could give it to the teacher for reimbursement of her meal.

8   Plaintiff was confused by this request and reiterated their previous conversation regarding

9   the luggage reimbursement, explaining that the purchase order said nothing about the meal

10  but was for luggage costs that had, in fact, already been reimbursed; however, Ms. Fabok

11  became angry and took the check off Plaintiff's desk and left her office.

12      21.    The following day, Plaintiff went to Ms. Fabok's office to speak with her

13  further.  Ms. Fabok insisted that the thirty dollar reimbursement was appropriate for the

14  teacher's meal.

15      22.    Plaintiff went back to her office to find the regulation in question for Ms.

16  Fabok.  While there, Plaintiff called the auditor general's office to ensure that she herself

17  understood the rule correctly.  The individual with whom Plaintiff spoke at the auditor

18  general's office confirmed that an employee had to be in travel status for at least eighteen

19  hours to receive reimbursement for a dinner.  Plaintiff found her copy of the rule and brought

20  it back to Ms. Fabok and also reported her telephone conversation with the auditor general's

21  office.

22      23.    The following week, Plaintiff received an email from Ms. Fabok requesting

23  that she come to Ms. Fabok's office.  In this meeting, Ms. Fabok stated that four other

24  employees had complained that Plaintiff intimidated them and that they did not want to work

25  with her.

26  / / /

4

1    24.    Plaintiff feared that the real reason she had been called into this meeting was

2    that Ms. Fabok was still upset over the thirty dollar reimbursement issue, and asked Ms.

3    Fabok if that was the case.

4    25.    Ms. Fabok acknowledged that she in fact was upset that Plaintiff had called the

5    auditor general's office.

6    26.    After Plaintiff left Ms. Fabok's office, she went to the Director of Human

7    Resources, Cathy Mayes' ("Mayes") office, to discuss this incident, among other things.

8    27.    During the ensuing weeks, Ms. Fabok approached Plaintiff on at least two

9    separate occasions and gave Plaintiff two additional different explanations of why she

10   believed the teacher was owed for her meal reimbursement.

11   28.    On March 30, 2009, Plaintiff was terminated from her employment with

12   HUSD.  During the meeting in which Ms. Mayes informed Plaintiff of her termination,

13   Plaintiff asked why her position was being terminated.  Ms. Mayes responded that Plaintiff

14   was being terminated because of her previous complaint about Ms. Fabok.

15   29.    Shortly before her termination, Plaintiff became aware of an additional issue

16   involving apparent impropriety by Ms. Fabok in the distribution of monies from the District's

17   New School Facilities Fund (Fund 695).

18   30.    Fund 695 money is strictly designated for building and equipping new schools.

19   31.    At the time, the District was receiving Fund 695 money from the State School

20   Facilities Board for only one new school in the District, Williamsfield High School, and as

21   such the money could only legally be used for the building and equipping of that school.

22   32.    Plaintiff became aware, however, of a purchase order applying Fund 695

23   money to a $60,000 purchase of library books for the Chaparral School.

24   33.    Plaintiff spoke to John Snow, Purchasing Supervisor, about her concerns.

25   34.    The Principal of the Chaparral School, Jessica Edgar, is Ms. Fabok's daughter.

26   / / /

JACKSON WHITE
ATTORNEYS AT LAW

5

1    35.    Plaintiff was terminated on March 30, 2009, along with five other individuals,

2  allegedly because of a reduction in force.

3    36.    Five out of the six individuals terminated on March 30, 2009, were all 50 years

4  of age or older.  The sixth individual terminated was younger than the other employees

5  terminated and was offered and accepted a different position with HUSD.

6    37.    The other five employees, including Plaintiff, over the age of 50 were not

7  offered different positions with HUSD.

8    38.    Substantially younger employees were not included in the reduction in force.

9                                          **COUNT I**

10              **(Wrongful Termination in Violation of A.R.S. § 23-1501(3)(c)(ii))**

11    39.    All previous paragraphs of this Complaint are realleged as if set forth more

12  fully herein.

13    40.    Arizona Revised Statutes § 23-1501(3)(c)(ii) prohibits an employer from

14  discharging an employee for whistleblowing activities.

15    41.    In compliance with A.R.S. § 23-1501(3)(c)(ii), Plaintiff disclosed in a

16  reasonable manner that she had information or a reasonable belief that HUSD or an employee

17  of HUSD, had or would violate a statute of this state to either HUSD or a representative of

18  HUSD who Plaintiff reasonably believed was in a managerial or supervisor position and with

19  the authority to investigate and take action to prevent further violations.

20    42.    Plaintiff was terminated in whole or in part because of her whistleblowing

21  activities.

22    43.    As a direct and proximate result of HUSD's conduct, Plaintiff has suffered

23  humiliation and degradation, pain and suffering, severe mental anguish and distress, has been

24  wrongfully discharged, and consequently has suffered a substantial loss of income in the

25  form of past, present, and future wages along with employment benefits, prospective

26

JACKSON WHITE
ATTORNEYS AT LAW

6

1  retirement benefits, seniority, Social Security benefits, insurance coverage and other
2  monetary and non-monetary benefits due her.

3      44.    Plaintiff seeks, as a result of her wrongful termination, compensatory damages
4  incurred or to be incurred by her in an amount to be determined at trial.

5      45.    Because this claim arises from a contractual relationship, Plaintiff is entitled
6  to recover her reasonable attorney's fees pursuant to A.R.S. § 12-341.01(A).

7                              **COUNT II**
8                    **(Intentional Infliction of Emotional Distress)**

9      46.    All previous paragraphs of this Complaint are realleged as if set forth more
10  fully herein.

11      47.    The actions described in this Complaint committed by the Defendant in this
12  matter constitute extreme and outrageous conduct under Arizona law and were either
13  intended to cause Plaintiff severe emotional distress or were so recklessly indifferent to the
14  near certainty that the acts described in this Complaint would cause Plaintiff severe
15  emotional distress that they can be considered intentional.

16      48.    Plaintiff suffered severe and debilitating emotional distress, humiliation, and
17  degradation as a result of the acts undertaken by Defendant entitling her to recover damages.

18      WHEREFORE, Plaintiff requests that this court enter judgment in her favor and
19  against HUSD as follows:

20      A.    Declare that the employment practices complained of in this Complaint are
21            unlawful and that they violate A.R.S. § 23-1501(3)(c)(ii);

22      B.    Order Defendant to pay Plaintiff compensatory damages for loss of earning
23            and future earnings, pain and suffering, emotional distress, harm to reputation
24            and loss of earning capacity, and all special damages or financial losses that
25            Plaintiff has suffered in an amount to be proven at trial;

26      C.    For loss of fringe benefits in an amount that will be proven at trial;

7

D.   For additional damages to compensate for the taxation of Plaintiff's economic damages;

E.   Award Plaintiff prejudgment interest from the date each claim for damages was liquidated;

F.   Award Plaintiff interest on all sums awarded in judgment at the highest legal rate allowable from the date of judgment until paid;

G.   Order Defendants to pay Plaintiff's court costs, expenses, and reasonable attorneys' fees in connection with this action, as provided in A.R.S. § 12-341 and 341.01 and any other applicable statute;

H.   For Plaintiff's continuing costs in this matter; and

I.   For such other and further relief as this court deems just and proper under the circumstances.

**DATED** this 30th day of March, 2010.

**JACKSON WHITE**

By:   Michael R. Pruitt, No. 011792
40 North Center Street, Suite 200
Mesa, Arizona  85201
*Attorneys for Plaintiff*

**ORIGINAL** of the foregoing filed with the Clerk of the Court this 30th day of March, 2010.

By: _____
F:\JKL\Lopez, P\Pldgs\Complaint.wpd

JACKSON WHITE
ATTORNEYS AT LAW

8

**JACKSONWHITE**
ATTORNEYS AT LAW
*A Professional Corporation*

40 North Center Street, Suite 200
Mesa, Arizona 85201
Telephone No.:      (480) 464-1111
Facsimile No.:      (480) 464-5692
Email:      centraldockett@jacksonwhitelaw.com
*Attorneys for Defendants*
By:      Michael R. Pruitt, State Bar No. 011792
         mpruitt@jacksonwhitelaw.com

COPY

MAR 3 0 2010

MICHAEL K. JEANES, CLERK
A. JAMES
DEPUTY CLERK

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

Pauline Lopez, a married woman filing individually,

Plaintiff,

vs.

Higley Unified School District No. 60, a public school district in Maricopa County, Arizona; John and Jane Does I-X; Black Corporations I-X; and White Partnerships I-X,

Defendants.

CV2010-092248

Case No. CV _____

**CERTIFICATE RE: COMPULSORY ARBITRATION PURSUANT TO RULE 72**

The undersigned certifies that he or she knows the dollar limits and any other limitations set forth by the local rules of practice for the applicable superior court, and further certifies that this case is not subject to compulsory arbitration, as provided by Rules 72 through 76 of the Arizona Rules of Civil Procedure.

/ / /

/ / /

/ / /

**DATED** this 30th day of March, 2010.

**JACKSON WHITE**

By:    Michael R. Pruitt, No. 011792
40 North Center Street, Suite 200
Mesa, Arizona  85201
*Attorneys for Plaintiff*

**ORIGINAL** of the foregoing filed with
the Clerk of the Court this 30th day of
March, 2010.

By:

F:\UKL\Lopez, P\Pldgs\Certificate Re Compulsory Arbitration.wpd

JACKSON WHITE
ATTORNEYS AT LAW

2

COPY

MAR 3 0 2010

MICHAEL K. JEANES, CLERK
A. JAMES
DEPUTY CLERK

1

**JACKSONWHITE**
ATTORNEYS AT LAW
*A Professional Corporation*

2

3

40 North Center Street, Suite 200
Mesa, Arizona 85201

4

Telephone No.:     (480) 464-1111
Facsimile No.:     (480) 464-5692

5

Email:     centraldockett@jacksonwhitelaw.com

6

*Attorneys for Defendants*
By:     Michael R. Pruitt, State Bar No. 011792

7

mpruitt@jacksonwhitelaw.com

8

9

10

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

11

## IN AND FOR THE COUNTY OF MARICOPA

12

Pauline Lopez, a married woman filing
individually,

13

Plaintiff,

14

CV2010-092248

Case No. CV _____

15

vs.

**DEMAND FOR JURY TRIAL**

16

Higley Unified School District No. 60, a
public school district in Maricopa County,
Arizona; John and Jane Does I-X; Black
Corporations I-X; and White Partnerships
I-X,

17

18

Defendants.

19

20

Pursuant to Ariz.R.Civ.P. 38(b), Plaintiff files her demand for a jury trial in this

21

matter.

22

/ / /

23

/ / /

24

/ / /

25

/ / /

26

/ / /

JACKSONWHITE
ATTORNEYS AT LAW

1   **DATED** this 30th day of March, 2010.

2                                          **JACKSON WHITE**

3

4                                          By:    Michael R. Pruitt, No. 011792

5                                          40 North Center Street, Suite 200
                                           Mesa, Arizona  85201

6                                          *Attorneys for Plaintiff*

7   **ORIGINAL** of the foregoing filed with
    the Clerk of the Court this 30th day of

8   March, 2010.

9   By:

10  F:\JKL\Lopez, P\Pldgs\Demand For Jury Trial.wpd

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

2

COPY

'JUL 15 2010



MICHAEL K. JEANES, CLERK
M. McTAGGART
DEPUTY CLERK

1

**JACKSONWHITE**
2      ATTORNEYS AT LAW
          *A Professional Corporation*
3
   40 North Center Street, Suite 200
4  Mesa, Arizona 85201
   Telephone No.:      (480) 464-1111
5  Facsimile No.:      (480) 464-5692
   Email:      centraldockett@jacksonwhitelaw.com
6  *Attorneys for Plaintiff*
   By:      Michael R. Pruitt, State Bar No. 011792
7          Email: mpruitt@jacksonwhitelaw.com

8

9

10          **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

11              **IN AND FOR THE COUNTY OF MARICOPA**

12  Pauline Lopez, a married woman filing
    individually,
13                                                    Case No. CV2010-092248
            Plaintiff,
14                                                    **FIRST AMENDED COMPLAINT**
    vs.
15                                                    (Wrongful Termination In Violation of
    Higley Unified School District No. 60, a           A.R.S § 23-1501(3)(c)(ii); Intentional
16  public school district in Maricopa County,          Infliction of Emotional Distress; and
    Arizona; John and Jane Does I-X; Black              Age Discrimination)
17  Corporations I-X; and White Partnerships
    I-X,                                                *(Jury Trial Requested)*
18
            Defendants.
19

20          Plaintiff, Pauline Lopez, by and through her counsel undersigned, and for her First

21  Amended Complaint, alleges as follows:

22          1.      Plaintiff is, and at all times relevant to this action has been, a married woman

23  residing in Maricopa County, Arizona, who is filing this action individually.

24          2.      Defendant, Higley Unified School District No. 60 ("HUSD"), is a public school

25  district in Maricopa County, Arizona as defined by A.R.S. § 15-1401, *et seq.*

26  / / /

1     3.     At all times material hereto, HUSD was acting through its agents and/or

2  employees, and is therefore liable for the actions of those agents and/or employees under the

3  doctrine of respondeat superior.

4     4.     John and Jane Does I-X, Black Corporations I-X, and White Partnerships I-X,

5  are fictitious individuals or entities who may be liable to Plaintiff for all or part of her

6  damages.  At this time, the true names of these individuals or entities are not known, but

7  leave of court will be sought to add their true names at such time as they are discovered.

8     5.     The events giving rise to these causes of action occurred in Maricopa County,

9  Arizona within the jurisdiction of this court.

10     6.     This court has subject matter jurisdiction over Plaintiff's claims.

11                           **BACKGROUND FACTS**

12     7.     Plaintiff began working for HUSD on October 17, 2001 as an Accounts

13  Payable Clerk.  In 2004, she was promoted to the position of Accounts Payable Coordinator

14  for the District.

15     8.     Prior to working for HUSD, Plaintiff had worked for Paige Schools for seven

16  years.  As such, Plaintiff was employed by HUSD for eight and a half years and in Arizona

17  schools for a total of over fifteen years.

18     9.     As Accounts Payable Coordinator, Plaintiff was responsible for processing

19  requisitions from HUSD staff per the purchasing processes established by HUSD, verifying

20  receipt of goods or services, paying invoices and/or ensuring invoices were paid for goods

21  or services received, maintaining accuracy of vendor maintenance files, processing 1099s for

22  appropriate vendors, assuring that purchase orders stay within HUSD's budget, maintaining

23  complete and accurate files and records on behalf of the Business Manager, receiving

24  training on skills and technology used in performance of duties, and supporting HUSD's

25  Business Office and Business Office.

26     10.     Plaintiff is 58 years old.

2

1      11.    Plaintiff was and is qualified as an Accounts Payable Coordinator.

2      12.    Prior to the incidents that give rise to this litigation, Plaintiff's work
3  performance was always at least satisfactory, and she received regular pay increases each
4  year. Plaintiff enjoyed and valued her job at HUSD.

5      13.    In December 2008, Plaintiff received a purchase order and receipts for travel
6  expenses incurred by a teacher in the District on a trip to St. Louis with some students.

7      14.    Upon review of the receipts, Plaintiff concluded that the teacher did not qualify
8  for reimbursement on one of the submitted receipts. The receipt in question was for dinner
9  purchased by the teacher upon her return to Phoenix; the dinner did not qualify for
10  reimbursement because the teacher had been in travel status for only sixteen hours when she
11  purchased the dinner and by law could receive reimbursement for the dinner only after
12  having been in travel status for at least eighteen hours.

13      15.    Plaintiff called the teacher and explained to her why she would not receive
14  reimbursement on the single receipt. The teacher seemed to understand and did not argue
15  the point.

16      16.    A few days later, Plaintiff's supervisor, Joan Fabok ("Fabok"), requested a
17  copy of the purchase order and saw that the teacher had not been reimbursed the thirty dollars
18  for the dinner in question.

19      17.    Subsequently, on January 29, 2009, Ms. Fabok had an additional purchase
20  order created to provide reimbursement to the teacher on two receipts for luggage costs in
21  the amount of fifteen dollars each, for a total of thirty dollars. However, the teacher already
22  had been reimbursed for these exact luggage costs with the previous purchase order
23  processed by Plaintiff.

24      18.    When Plaintiff became aware of the second purchase order, she approached
25  Ms. Fabok and explained that the teacher already had received reimbursement for the luggage
26

JACKSONWHITE
ATTORNEYS AT LAW

3

1 || costs.  Plaintiff pointed out the luggage reimbursement on the original purchase order, to
2 || which Ms. Fabok simply said, "oh, ok."

3 ||     19.    When Plaintiff subsequently received the checks, her understanding was that
4 || the second purchase order and related check for thirty dollars was a mistake and that she was
5 || to void the check.

6 ||     20.    However, before she had voided the check, Ms. Fabok asked Plaintiff for the
7 || thirty dollar check so that she could give it to the teacher for reimbursement of her meal.
8 || Plaintiff was confused by this request and reiterated their previous conversation regarding
9 || the luggage reimbursement, explaining that the purchase order said nothing about the meal
10 || but was for luggage costs that had, in fact, already been reimbursed; however, Ms. Fabok
11 || became angry and took the check off Plaintiff's desk and left her office.

12 ||     21.    The following day, Plaintiff went to Ms. Fabok's office to speak with her
13 || further.  Ms. Fabok insisted that the thirty dollar reimbursement was appropriate for the
14 || teacher's meal.

15 ||     22.    Plaintiff went back to her office to find the regulation in question for Ms.
16 || Fabok.  While there, Plaintiff called the auditor general's office to ensure that she herself
17 || understood the rule correctly.  The individual with whom Plaintiff spoke at the auditor
18 || general's office confirmed that an employee had to be in travel status for at least eighteen
19 || hours to receive reimbursement for a dinner.  Plaintiff found her copy of the rule and brought
20 || it back to Ms. Fabok and also reported her telephone conversation with the auditor general's
21 || office.

22 ||     23.    The following week, Plaintiff received an email from Ms. Fabok requesting
23 || that she come to Ms. Fabok's office.  In this meeting, Ms. Fabok stated that four other
24 || employees had complained that Plaintiff intimidated them and that they did not want to work
25 || with her.

26 || / / /

JACKSON WHITE
ATTORNEYS AT LAW

4

1     24.    Plaintiff feared that the real reason she had been called into this meeting was

2   that Ms. Fabok was still upset over the thirty dollar reimbursement issue, and asked Ms.

3   Fabok if that was the case.

4     25.    Ms. Fabok acknowledged that she in fact was upset that Plaintiff had called the

5   auditor general's office.

6     26.    After Plaintiff left Ms. Fabok's office, she went to the Director of Human

7   Resources, Cathy Mayes' ("Mayes") office, to discuss this incident, among other things.

8     27.    During the ensuing weeks, Ms. Fabok approached Plaintiff on at least two

9   separate occasions and gave Plaintiff two additional different explanations of why she

10   believed the teacher was owed her meal reimbursement.

11     28.    On March 30, 2009, Plaintiff was terminated from her employment with

12   HUSD. During the meeting in which Ms. Mayes informed Plaintiff of her termination,

13   Plaintiff asked why her position was being terminated. Ms. Mayes responded that Plaintiff

14   was being terminated because of her previous complaint about Ms. Fabok.

15     29.    Shortly before her termination, Plaintiff became aware of an additional issue

16   involving apparent impropriety by Ms. Fabok in the distribution of monies from the District's

17   New School Facilities Fund (Fund 695).

18     30.    Fund 695 money is strictly designated for building and equipping new schools.

19     31.    At the time, the District was receiving Fund 695 money from the State School

20   Facilities Board for only one new school in the District, Williamsfield High School, and as

21   such the money could only legally be used for the building and equipping of that school.

22     32.    Plaintiff became aware, however, of a purchase order applying Fund 695

23   money to a $60,000 purchase of library books for the Chaparral School.

24     33.    Plaintiff spoke to John Snow, Purchasing Supervisor, about her concerns.

25     34.    The Principal of the Chaparral School, Jessica Edgar, is Ms. Fabok's daughter.

26   / / /

JACKSON WHITE
ATTORNEYS AT LAW

5

1     35.   Plaintiff was terminated on March 30, 2009, along with five other individuals,

2  allegedly because of a reduction in force.

3     36.   Five out of the six individuals terminated on March 30, 2009, were all 50 years

4  of age or older.  The sixth individual terminated was younger than the other employees

5  terminated and was offered and accepted a different position with HUSD.

6     37.   The other five employees, including Plaintiff, over the age of 50 were not

7  offered different positions with HUSD.

8     38.   Substantially younger employees were not included in the reduction in force.

9     39.   Plaintiff filed a charge of discrimination with the United States Equal

10  Employment Opportunity Commission ("EEOC") on or about December 15,2009.  A true

11  and correct copy of the charge is attached hereto as Exhibit "A."

12     40.   On or about June 29, 2010, the EEOC mailed a Right to Sue letter to Plaintiff.

13     41.   Plaintiff timely filed this lawsuit.

14                 **COUNT I**

15       **(Wrongful Termination in Violation of A.R.S. § 23-1501(3)(c)(ii))**

16     42.   All previous paragraphs of this First Amended Complaint are realleged as if

17  set forth more fully herein.

18     43.   Arizona Revised Statutes § 23-1501(3)(c)(ii) prohibits an employer from

19  discharging an employee for whistleblowing activities.

20     44.   In compliance with A.R.S. § 23-1501(3)(c)(ii), Plaintiff disclosed in a

21  reasonable manner that she had information or a reasonable belief that HUSD or an employee

22  of HUSD, had or would violate a statute of this state to either HUSD or a representative of

23  HUSD who Plaintiff reasonably believed was in a managerial or supervisor position and with

24  the authority to investigate and take action to prevent further violations.

25     45.   Plaintiff was terminated in whole or in part because of her whistleblowing

26  activities.

1    46.    As a direct and proximate result of HUSD's conduct, Plaintiff has suffered
2    humiliation and degradation, pain and suffering, severe mental anguish and distress, has been
3    wrongfully discharged, and consequently has suffered a substantial loss of income in the
4    form of past, present, and future wages along with employment benefits, prospective
5    retirement benefits, seniority, Social Security benefits, insurance coverage and other
6    monetary and non-monetary benefits due her.

7    47.    Plaintiff seeks, as a result of her wrongful termination, compensatory damages
8    incurred or to be incurred by her in an amount to be determined at trial.

9    48.    Because this claim arises from a contractual relationship, Plaintiff is entitled
10   to recover her reasonable attorney's fees pursuant to A.R.S. § 12-341.01(A).

11                                   **COUNT II**

12                    **(Intentional Infliction of Emotional Distress)**

13   49.    All previous paragraphs of this First Amended Complaint are realleged as if
14   set forth more fully herein.

15   50.    The actions described in this First Amended Complaint committed by the
16   Defendant in this matter constitute extreme and outrageous conduct under Arizona law and
17   were either intended to cause Plaintiff severe emotional distress or were so recklessly
18   indifferent to the near certainty that the acts described in this First Amended Complaint
19   would cause Plaintiff severe emotional distress that they can be considered intentional.

20   51.    Plaintiff suffered severe and debilitating emotional distress, humiliation, and
21   degradation as a result of the acts undertaken by Defendant entitling her to recover damages.

22                                   **COUNT III**

23                            **(Age Discrimination)**

24   52.    All previous paragraphs of this First Amended Complaint are realleged as if
25   set forth more fully herein.

26   / / /

JACKSONWHITE
ATTORNEYS AT LAW

7

1   53.   The Age Discrimination in Employment Act of 1967 ("ADEA"), codified at

2   29 U.S.C. §§ 621-634, proscribes employment discrimination based on age.

3   54.   Under the ADEA, it is unlawful for an employer to discriminate against any

4   individual with respect to his/her compensation, terms, conditions or privileges of

5   employment because of the individual's age. These protections apply to individuals 40 years

6   of age or older.

7   55.   Plaintiff is over the age of 40 and was well qualified and capable of performing

8   her job and duties with HUSD.

9   56.   Plaintiff suffered discrimination due to her age under either a disparate

10  treatment or disparate impact basis, and she has met all statutory prerequisites for bringing

11  this action.

12  57.   The ADEA incorporates the civil remedies that are allowed under the Equal

13  Pay Act, 29 U.S.C. § 626 (b), including back pay and liquidated damages in an amount equal

14  to the back pay award, plus fringe benefits. Other available remedies include equitable relief

15  compelling reinstatement or in the alternative, compensation for loss of future earnings

16  ("front pay").

17  58.   Plaintiff is also entitled to recover her costs and attorneys' fees.

18  WHEREFORE, Plaintiff requests that this court enter judgment in her favor and

19  against HUSD as follows:

20  A.   Declare that the employment practices complained of in this First Amended

21  Complaint are unlawful and that they violate A.R.S. § 23-1501(3)(c)(ii) and

22  29 U.S.C. §§ 621-634;

23  B.   Order Defendant to pay Plaintiff compensatory damages for loss of earnings

24  and future earnings, pain and suffering, emotional distress, harm to reputation

25  and loss of earning capacity, and all special damages or financial losses that

26  Plaintiff has suffered in an amount to be proven at trial;

JACKSON WHITE
ATTORNEYS AT LAW

8

C.    For loss of fringe benefits in an amount that will be proven at trial;

D.    For additional damages to compensate for the taxation of Plaintiff's economic damages;

E.    For liquidated damages;

F.    For all relief available under the ADEA;

G.    Award Plaintiff prejudgment interest from the date each claim for damages was liquidated;

H.    Award Plaintiff interest on all sums awarded in judgment at the highest legal rate allowable from the date of judgment until paid;

I.    Order Defendant to pay Plaintiff's court costs, expenses, and reasonable attorneys' fees in connection with this action, as provided in A.R.S. §§ 12-341 and 341.01 and 29 U.S.C. § 621, *et seq.*;

J.    For Plaintiff's continuing costs in this matter;

K.    Retain jurisdiction over this action to ensure full compliance with the Court's orders and require Defendant to file such reports as the Court deems necessary to evaluate such compliance; and

L.    For such other and further relief as this court deems just and proper under the circumstances.

**DATED** this 15th day of July, 2010.

**JACKSON WHITE**

By:    Michael R. Pruitt, No. 011792
40 North Center Street, Suite 200
Mesa, Arizona 85201
*Attorneys for Plaintiff*

/ / /
/ / /

JACKSON WHITE
ATTORNEYS AT LAW

1   **ORIGINAL** of the foregoing filed with
the Clerk of the Court this 15th day of
2   July, 2010.

3

By: _____

4   F:\JKL\Lopez, P\Pldgs\First Amended Complaint.wpd

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

JACKSONWHITE
ATTORNEYS AT LAW

10

Exhibit A

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 540-2010-00807 |
| | | and EEOC |

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone No. (Incl Area Code) | Date of Birth |
|---|---|---|
| Ms. Pauline Lopez | (480) 279-6123 | 12/05/51 |

| Street Address | City, State and ZIP Code |
|---|---|
| 3323 S. Ponderosa Drive, Gilbert, AZ  85297 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Higley Unified School District | 500 or More | (480) 279-7000 |

| Street Address | City, State and ZIP Code |
|---|---|
| 2935 S. Recker Road, Gilbert, AZ  85295 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☐ RETALIATION   ☒ AGE   ☐ DISABILITY   ☐ OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest          Latest
03/30/2009

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I began working for the above named Respondent on October 17, 2001 as an Accounts Payable Clerk. In 2004, I was promoted to Accounts Payable Coordinator for the District. On March 30, 2009, while I was 57 years old, I was terminated from my employment with Respondent, along with five other individuals, allegedly because of a reduction in force. Five out of the six individuals terminated on March 30, 2009, were all 50 years of age or older. The sixth individual terminated was younger than the other employees terminated and was offered and accepted a different position with the Respondent. The other five employees, including myself, over the age of 50 were not offered different positions with Respondent. Substantially younger employees were not included in the reduction in force.

DISCRIMINATION STATEMENT: I believe that I, and a class of employees over 40 and above have been discriminated against in violation of the Age Discrimination in Employment Act of 1967, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| *12-8-09* Date   *Pauline Lopez* Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |